UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-1697 JGB (KKx)** | Date | July 22, 2020 |
|---|---|---|---|
| Title | *Deborah Clay v. Prolink Staffing Services, LLC* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order GRANTING Plaintiff's Motion for Preliminary Approval of Class Settlement (Dkt. No. 24) (IN CHAMBERS)

Before the Court is Plaintiff Deborah Clay's ("Plaintiff") motion for preliminary approval of class settlement. ("Motion," Dkt. No. 24.) The Motion is unopposed. ("Defendant's Notice of Non-opposition," Dkt. No. 25.) The Court determines the Motion is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. Upon consideration of the papers filed in support of the Motion, the Court GRANTS the Motion.

### I. BACKGROUND

On September 5, 2019, Plaintiff filed a complaint in this matter against Defendant Prolink Staffing Services, LLC ("Defendant" or "Prolink"). ("Complaint," Dkt. No. 1.) In the Complaint, Plaintiff alleges three causes of action: (1) failure to pay overtime wages under California Labor Code §§ 510, 1194; (2) Unfair Business Practices under California Business and Professions Code § 17200, et seq.; and (3) waiting time penalties under California Labor Code § 203. (Id.)

Plaintiff alleges that she worked for Prolink as an hourly-paid, non-exempt employee. (Id. ¶ 24.) In addition to her hourly wages, Plaintiff alleges that Prolink required her to satisfy minimum weekly work requirements in order to earn a per diem allowance. (Id. ¶¶ 11, 13–14.) She alleges that Prolink did not include the value of this renumeration in employees' regular rate of pay for purposes of calculating overtime pay or double time pay. (Id. ¶¶ 17, 23.) As a result, Plaintiff alleges that she was not paid the correct premium overtime rates (id. ¶ 37); that Prolink

thus willfully failed to timely pay all wages owed to her when her employment was terminated (id. ¶ 48); and that the practice of failing to pay Plaintiff correct premium overtime rates amounted to an unfair and unlawful business practice (id. ¶¶ 41–42).

On April 21, 2020, Plaintiff filed the Motion. (See Motion.) In support of the Motion, Plaintiff filed a memorandum of points and authorities ("Memo," Dkt. No. 24-1), an appendix of evidence (Dkt. No. 24-2), two compendiums of evidence (Dkt. Nos. 24-3–4), and a proposed order (Dkt. No. 24-5).

## II. THE SETTLEMENT AGREEMENT

Plaintiff filed a Joint Stipulation and Class Action Settlement and Release on April 21, 2020. ("Settlement Agreement," Dkt. No. 24-4, Exhibit 2.) The Settlement Agreement is intended to resolve all pending and potential claims raised in this case. (Id.) By agreeing to the terms of the Settlement Agreement, Prolink does not admit the truth of any allegation in the Complaint. (Id. ¶ 12.)

Under the terms of the Settlement Agreement, Prolink agrees to make a non-revisionary deposit of $112,500.00 ("Settlement Amount") into a qualified settlement fund, which will be used for payment of: (i) attorneys' fees for Class Counsel not to exceed 25% of the Settlement Amount and otherwise determined by the Court; (ii) costs for Class Counsel not to exceed $1,000[1] and otherwise determined by the Court; (ii) individual settlement payments to the settlement class; (iii) a service award to Plaintiff Clay not to exceed $1,000.00 and otherwise determined by the Court; and (iv) the settlement administrator's costs not to exceed $5,000.00. (Id. ¶¶ 5–6.) In exchange for their individual settlement payment, participating class members agree to release Prolink from all claims arising out of this action during the settlement period, defined as the period between September 6, 2015 and September 6, 2019 ("Class Period"). (Id. ¶ 2.) Both Plaintiff and participating class members waive any further attempt to obtain recovery from Prolink, its owners, officers, employees, subsidiaries, affiliates, agents, and predecessors or successors based on any other claims, debts, liabilities, obligations, or causes of action which could be alleged based on the facts in the Complaint during the Class Period. (Id. ¶ 4.)

The parties anticipate that the Settlement Amount will be divided as follows: a maximum of $28,125.00 will be paid as attorneys' fees and costs to Class Counsel. (Id. ¶ 6.) Reasonable costs of administering the settlement and distribution of payments from the Settlement Amount, estimated at $5,000.00, will be paid to the settlement administrator, Phoenix Class Action Administration Solutions ("Settlement Administrator"). (Id.; "Class Notice," Dkt. No. 24-4, Exhibit A at 4.) Clay's service award will amount to no more than $1,000.00. (Settlement

---

[1] The Settlement Agreement states that, "reimbursement of actual costs to Class Counsel [shall] not [] exceed Two Thousand Dollars ($1,000)[.]" (Settlement Agreement ¶ 6 (emphasis added).) The Agreement later uses the $1,000.00 figure to calculate the net settlement fund. (Id.) For purposes of the Motion, the Court assumes that $1,000.00 is the amount the parties agreed upon.

Agreement ¶ 6.)  After each deduction is made, the estimated net settlement fund would amount to $77,375.00 ("Net Settlement Amount").  (Id.)  The Net Settlement Amount will be distributed to all class members on a pro-rata basis according to the number of overtime hours each member worked during the Class Period.  (Id. ¶ 7.)  The entire Net Settlement Amount will be distributed to all class members who do not opt-out by submitting timely and valid requests for exclusion.  (Id. ¶¶ 10–11.)  Class members may opt-out of the class by signing and submitting a written request for exclusion to the Settlement Administrator within the 45-day response deadline.  (Id. ¶ 10.)   Based on the Net Settlement Amount and on an estimated Settlement Class of 58 individuals, the average net recovery of each individual class member would be approximately $1,300.00.  (Memo at 8.)

### III. LEGAL STANDARD

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Court approval occurs in three steps, the first of which is a preliminary approval hearing.  See Manual for Complex Litigation (Fourth) §§ 21.632 (2012).  At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."  Id.  "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval."  Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  A court considers the following factors to determine whether a settlement agreement is potentially fair: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

Approval of a class action settlement requires certification of a settlement class.  La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted).  A court may certify a class if the plaintiff demonstrates that the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) — in this case, Rule 23(b)(3).  See Fed R. Civ. P. 23; see also Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979 (9th Cir. 2011.)

Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class.  See Fed R. Civ. P. 23(a).  Rule 23(b)(3) requires that common questions of law or fact predominate so that a class action is superior to another method of adjudication.  Fed. R. Civ. P. 23(b)(3).

### IV. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the parties seek conditional certification of a settlement class defined as "[a]ll non-exempt hourly employees employed by Prolink in California who worked pursuant to an assignment agreement that provided for a weekly per diem payment and a missed shift deduction and worked overtime at any time from September 6, 2015 through September 6, 2019" ("Settlement Class"). (Settlement Agreement ¶ 2.)

**A. Requirements of Rule 23(a)**

**1. Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but it need not be impossible. Keegan v. American Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity, but 40 or more members will generally satisfy the numerosity requirement. Id. Here, the proposed class contains approximately 58 individuals. ("Hayes Declaration," Dkt. No. 24-3, Exhibit 1 ¶¶ 18, 36.) Thus, the Settlement Class is sufficiently numerous.

**2. Commonality**

The commonality requirement is met when the plaintiff's claims "depend upon a common contention… capable of classwide resolution — which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011). Commonality does not require "that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (emphasis in Abdullah)).

Plaintiff argues that all class members share a common contention: that Prolink's policy of excluding per diem payments from employees' regular rate of pay caused Prolink to underpay its employees for overtime worked. (Memo at 23.) Plaintiff contends that resolution of this issue would drive resolution of each claim asserted in the Complaint. (Id.) The Court agrees. If Plaintiff and class members were to obtain judicial resolution of whether their per diem payments were part of the regular rate of pay, it would "resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 338; see also Carlino v. CHG Med. Staffing, Inc., 2019 WL 1005070, at *4 (E.D. Cal. Feb. 28, 2019) ("The court concludes that commonality is therefore satisfied here because the unpaid overtime claims and the derivative state law claims of all the proposed class members will stand or fall on whether the value of the

per diem is a part of the regular rate when calculating overtime."). Accordingly, the Court is satisfied Plaintiff has met the commonality requirement.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020.

Here, both Plaintiff and other class members are non-exempt current or former employees of Prolink who suffered the same alleged financial injury as a result of the alleged underpayment of wages. (Complaint ¶ 24.) As described above, Prolink allegedly deprived Plaintiff and class members of adequate overtime because the value of their per diem payments were excluded from their regular rate of pay when calculating overtime. (Id. ¶¶ 17, 23, 37.) As a result, Plaintiff and other class members have allegedly suffered identical legal injuries inflicted from the same course of conduct. Wolin, 617 F.3d at 1175. The Court is thus satisfied that Plaintiff has met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, courts are to inquire (1) whether the proposed class representative and class counsel have any conflicts of interest with the rest of the potential class, and (2) whether the proposed class representative and class counsel will prosecute the action vigorously on behalf of the class as a whole. See Hanlon, 150 F.3d at 1020; Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiff represents that she has no conflicts of interest with the putative class members, and Class Counsel represent they have and will vigorously represent the interests putative class members. (Memo at 24.) Moreover, Plaintiff's counsel has extensive experience handling employment and wage and hour class actions, serving as lead counsel on numerous cases in the Central District and throughout California. (Hayes Declaration ¶¶ 2, 5, 39.) The Court is satisfied that Plaintiff and Class Counsel adequately represent the putative class.

## B. Requirements of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Plaintiff maintains the Settlement Agreement satisfies the requirements of Rule 23(b)(3). (Memo at 24.) Rule 23(b)(3) requires that "the questions of law

or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

First, the Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by a class action. Hanlon, 150 F.3d at 1022. A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id. That putative class members may be owed different amounts of damages is not fatal to the 23(b)(3) inquiry as long as the individualized damages are a matter of "straightforward accounting." In re Facebook, Inc., PPC Adver. Litig., 282 F.R.D. 446, 459 (N.D. Cal. 2012). Additionally, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

The Court is satisfied that common questions of law or fact predominate over questions pertaining to individual class members. Where workplace violations are at issue, as in this case, "the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." Kamar v. Radio Shack Corp., 254 F.R.D. 387, 399 (C.D. Cal. 2008.) As alluded to in Part IV.A.3, Prolink's alleged per diem compensation policy and practice of calculating overtime applies class-wide, and liability for the practice can thus be determined by resolving factual and legal issues common to the class. See Arrendondo v. Delano Farms Co., 2011 WL 1486612, at *15 (E.D. Cal. Apr. 19, 2011) ("The existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof."). Furthermore, because damages in this matter can be calculated merely by tallying class members' overtime hours worked inclusive of per diem payments in the regular rate of pay, calculation is a matter of "straightforward accounting." In re Facebook, 282 F.R.D. at 459.

Second, Rule 23(b)(3) requires the Court to determine whether a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). In making this determination, courts consider factors such as (i) the individual class members' interest in controlling the litigation of separate actions, (ii) whether there is any pre-existing litigation of the controversy, (iii) the desirability of concentrating the litigation of the claims in the particular forum, and (iv) any difficulties that may arise from maintaining a class action. Fed R. Civ. P. 23(b)(3); Wolin, 617 F.3d at 1175. Where parties seek class certification for settlement purposes only, courts need not consider the final two factors, which address trial manageability. Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, at *9 (E.D. Cal. Nov. 27, 2012).

The Court is satisfied that a class action is the superior means of resolving the claims in the Complaint. No individual class members have any apparent interest in controlling their case through the prosecution of separate actions. See Hanlon, 150 F.3d at 1023. Additionally, since recovery on an individual basis would amount to approximately $1,000.00, proceeding as a class action is preferable because it permits class members to resolve their claims in the most cost-

effective manner possible.  See Wolin, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").  Finally, with an estimated 58 putative class members, class-wide settlement provides the most efficient and effective means of resolving this controversy.

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT

At the Preliminary Approval phase, the Court need only decide whether the settlement is potentially fair.  Acosta, 243 F.R.D. at 386.  After the class members have been notified of the Settlement and given an opportunity to object, the Court will hold a formal fairness hearing to determine whether the Settlement is fair, reasonable, and adequate.  See Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation (Fourth) §§ 21.632-34 (2012).  A full fairness analysis is unnecessary until the Court conducts the final fairness hearing.  Campbell v. First Investors Corp., 2012 WL 5373423, at *4 (S.D. Cal. Oct. 29, 2012).

At this stage, the Court must determine whether the proposed settlement is "within the permissible 'range of possible approval' and thus, whether the notice to the [C]lass and the scheduling of the formal fairness hearing is appropriate."  Campbell, 2012 WL 5373423, at *4 (quoting Alberto v. GMRI, Inc., 252 F.R.D. 652, 666 (E.D. Cal. 2008)).  If the settlement agreement "[1] is the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval," then preliminary approval should be granted.  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  Courts presume the fairness and reasonableness of settlement agreements that were the product of "non-collusive, arm's length negotiations conducted by capable and experienced counsel."  In re Netflix Privacy Litig., 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).

**A. Product of Serious, Informed, and Non-collusive Negotiations**

In order to approve a proposed settlement, a court must find the settlement was arrived at by serious, informed, non-collusive negotiations and that "[t]he parties… have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."  Acosta, 243 F.R.D. at 396 (internal quotation marks omitted); Monterrubio 291 F.R.D. at 454.  Here, the parties engaged in early discovery in this matter that resulted in the production of payroll data, along with policies and practices relating to staffing, weekly hours requirements, and rates.  (Hayes Declaration ¶¶ 12–13.)  Based on the production of this information, the parties spent two months engaged in negotiations involving arms-length exchanges between counsel for both parties.  (Id. ¶¶ 15–17.)  The parties have thus developed a clear idea of the strengths and weaknesses of their respective cases.  See Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.").

The Court finds that the parties have engaged in sufficient investigation of the facts and the applicable law, and further, that the settlement negotiations were at arm's length and were not collusive. This weighs in favor of granting preliminary approval of the Settlement.

**B. Contains No Obvious Deficiencies**

The Court must determine whether the proposed Settlement Agreement contains any obvious deficiencies. Monterrubio, 291 F.R.D. at 454; see also Philliben v. Uber Techs., Inc., 2016 WL 4537912, at *4 (N.D. Cal. Aug. 30, 2016) ("In application, 'obvious deficiencies' has become a useful catch-all for problems other than preferential treatment or inadequate consideration."). As discussed supra, the Settlement Agreement does appear to contain a typographical error stating that "reimbursement of actual costs to Class Counsel [shall] not [] exceed Two Thousand Dollars ($1,000)[.]" (Settlement Agreement ¶ 6 (emphasis added).) Later in the Settlement, the $1,000 figure is used to calculate the net settlement fund. (Id.) For purposes of preliminary approval, the difference between the two figures is too insignificant to warrant denial of the Motion. However, to avoid confusion and promote clarity, the parties should rectify the deficiency in the Settlement Agreement before final approval. Otherwise, the Court finds the Settlement Agreement contains no "glaring concerns." In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016).

**C. No Preferential Treatment of Certain Class Members**

A settlement agreement must not "improperly grant preferential treatment to class representatives or segments of the class." Monterrubio, 291 F.R.D. at 454 (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079). A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation activities. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); see also Gripenstraw v. Blazin' Wings, Inc., 2013 WL 6798926, at *14 (E.D. Cal. Dec. 20, 2013) (preliminarily determining that an incentive award appeared reasonable and appropriate). However, the Ninth Circuit has repeatedly directed district courts to "be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1164 (9th Cir. 2013); see also Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).

Here, the Settlement provides named Plaintiff with a maximum incentive or service award to be determined by the Court and otherwise not to exceed $1,000.00. (Settlement Agreement ¶ 6.) While incentive awards are fairly typical in class actions, they are purely discretionary, and Plaintiff will need to provide sufficient evidence at the final approval hearing to determine whether an incentive award should be granted. Austin v. Foodliner, Inc., 2018 WL 3956208, at *7 (N.D. Cal. Aug. 17, 2018). Regardless, because the amount of the award is left to the Court to determine and there are no other indications of preferential treatment, this factor weighs in favor of preliminary approval.

### D. The Range of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," a court "primarily consider[s] plaintiff['s] expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080. Here, Plaintiff estimates that her maximum potential for recovery is approximately $302,870.00. (Hayes Declaration ¶ 21.) Of that amount, $143,270.00 consists of allegedly unpaid overtime and $159,600.00 consists of alleged waiting time penalties. (Id.) The gross Settlement Amount of $112,500.00 equates to approximately 37% of the maximum potential recovery.[2]

In the Memo, Plaintiff comprehensively details the risk of continuing to litigate this matter in pursuit of the maximum potential recovery. In particular, Plaintiff correctly points out that: (1) neither the Ninth Circuit nor the California Court of Appeals have addressed whether per diem payments are part of the "regular rate" of pay for purposes of computing wage benefits; and (2) the unsettled nature of the law regarding the classification of per diem payments makes establishing Defendant's "willful" violation for purposes of waiting time penalties much more difficult. (Memo at 22–23.) In light of the risk posed by continued litigation and the reasonableness of the Settlement Amount compared to the total potential recovery, the Court finds the Settlement Amount to be within the range of possible approval. Alcala v. Meyer Logistics, Inc., 2019 WL 4452961, at *7 (C.D. Cal. June 17, 2019) ("The California Class Settlement amount of approximately $200,000, before deductions, then represents more than 30 percent of the calculated damages estimated by Plaintiff, which is well within the range of possible approval."); see also Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving settlement that "constituted approximately 25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial").

### E. Attorneys' Fees and Costs

At the preliminary approval stage, the Court need not make its final decision regarding the reasonableness of attorneys' fees and costs. Instead, it need only determine that the requested fees and costs are not the products of apparent collusion. See Tijero v. Aaron Bros., Inc., 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013); Graham v. Overland Solutions, Inc., 2012 WL 4009547, at *9 (S.D. Cal. Sept. 12, 2012). Where, as here, attorneys seek fees on their own behalf from a common fund, fee allocation may be contrary to their clients' interests, and the court must "look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid." Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). In diversity actions, such as this one, federal courts apply state law governing the award of attorney's fees. See Northon v. Rule, 637 F.3d 937, 938 (9th Cir. 2011) (holding that state laws awarding attorneys' fees are generally considered to be

---

[2] 112,500 / 302,870 = approximately .3714.

substantive law under the Erie doctrine when the fee award is connected to the substance of the case).³

The Court may exercise discretion and award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel, 307 F.3d at 1006. Under the lodestar method, a court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). After calculating the lodestar, the court decides whether to adjust that "presumptively reasonable" figure. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975). Under the percentage method, the Court calculates the fee as a percentage of a common settlement fund. In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 109 F.3d 602, 606 (9th Cir. 1997). The Supreme Court of California has similarly left the choice between the lodestar and percentage methods to the discretion of its trial courts, but has recognized the benefits of the percentage-of-the-fund method. Laffitte v. Robert Half Internat. Inc., 1 Cal. 5th 480, 503 (2016).

Here, Plaintiff seeks attorneys' fees in an amount to be determined by the Court and up to 25% of the gross Settlement Award and up to an additional $1,000.00 in costs. (Settlement Agreement ¶ 6.) The Court finds nothing to suggest that the requested attorneys' fees and costs are the product of collusion. Tijero, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013). Additionally, the Ninth Circuit has established that an award of 25% of a plaintiff's total recovery is the "benchmark" for attorneys' fees calculations in contingency cases. Powers v. Eichen, 229 F.3d 1249, 1256–57 (9th Cir. 2000). Likewise, the California Supreme Court has affirmed the approval of settlements with attorneys' fees awarding 33% of the value of the common fund. Laffitte, 1 Cal. 5th at 488. While the Court will require proper documentation to award attorneys' fees and costs at the final fairness hearing, it is satisfied that the requested amounts are potentially reasonable and not the product of collusion.

## VI.   NOTICE PLAN AND FAIRNESS

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after Notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1).

The parties in this matter have drafted a class notice which provides readers with: (1) a description of this lawsuit and the claims at issue; (2) a definition of the Settlement Class; (3) an explanation for the Settlement Amount and how settlement payments to each individual class

---

³ Removal of a state case to federal court under the Class Action Fairness Act does not affect the application of Erie-related doctrines to the calculation of attorneys' fees. See McAtee v. Capital One, F.S.B., 479 F.3d 1143, 1147 (9th Cir. 2007.)

member are calculated; (4) disclosure of all deductions requested from the gross Settlement Amount for attorneys' fees, costs, service awards, and settlement administration expenses; (5) a description of the claims that are being released by the Settlement; (6) an explanation as to how a class member can request exclusion from the class; (7) an explanation as to how a class member can object to the Settlement; (8) disclosure of the time and place of the final approval hearing; and (9) a list of contact information for Class Counsel and the Settlement Administrator with advice that either may be contacted to answer questions about the Settlement. (See generally Class Notice.)

Phoenix Class Action Administration Solutions ("Phoenix") has been chosen to administer the Settlement. (Class Notice at 4.) No later than 15 days after the Court issues a Preliminary Approval Order, Prolink will provide Phoenix with a list containing the names, last known addresses, dates of employment, social security numbers, and qualifying overtime hours for each class member. (Settlement Agreement ¶ 10(b).) Within 15 days of receiving such information from Prolink, Phoenix will send the Class Notice to each class member via first-class United States mail. (Id.) For any Class Notice returned as undeliverable, Phoenix will either forward the Notice to the address provided or perform a skip-trace or other searches to locate the class member. (Id.) A class member who wishes to opt-out from or object to the Settlement Agreement must inform the Settlement Administrator in writing within 45 days of the mailing of the Class Notice. (Id. ¶ 10(c–d).)

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Approval is GRANTED. The Court thus ORDERS as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.

2. The following Settlement Class is certified for settlement purposes only: all non-exempt hourly employees employed by Prolink in California who worked pursuant to an assignment agreement that provided for a weekly per diem payment and a missed shift deduction and worked overtime at any time from September 6, 2015 through September 6, 2019.

3. The Court appoints Matthew Hayes and Kye Pawlenko, of Hayes Pawlenko LLP, as counsel on behalf of the Settlement Class for purposes of settlement only.

4. Plaintiff Deborah Clay is appointed as the representative of the Settlement Class for purposes of settlement only.

5. The Court appoints Phoenix Class Action Administration Solutions as the settlement administrator.

6. The Notice of Class Action Settlement is approved.

7. The Court authorizes mailing of the Class Notice to class members by first-class United States mail pursuant to the Settlement Agreement.

8. The hearing date for the final approval hearing is hereby set for September 7, 2020, subject to continuance to a date convenient for the Court and the parties.

**IT IS SO ORDERED.**